UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SONNY HINES,

    *Plaintiff*,

v.                              CASE NO. 13-CV-12568

COMMISSIONER OF             DISTRICT JUDGE JULIAN ABELE COOK
SOCIAL SECURITY,              MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

This Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (docket 8) be **DENIED**, that Defendant's Motion for Summary Judgment (doc. 9) be **GRANTED**, and the decision of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits (DIB), and supplemental security income benefits (SSI). The matter is currently before this Court on cross-motions for summary judgment.[2] (Docs. 8, 9.)

---

[1] The format and style of this Report and Recommendation comply with the requirements of Fed. R. Civ. P. 5.2(c)(2)(B). This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

[2] The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

Plaintiff filed an application for a period of disability, DIB and SSI on October 20, 2010, with an SSI protective filing date of September 16, 2010, alleging that he became unable to work on September 16, 2010. (Transcript, Doc. 6 at 150, 158.) The claims were denied at the initial administrative stages. (Tr. at 93-118.) On January 11, 2012, Plaintiff appeared before Administrative Law Judge ("ALJ") Michael S. Condon, who considered the application for benefits *de novo*. (Tr. at 40.) In a decision dated January 25, 2012, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from September 16, 2010 through the date of the ALJ's decision. (Tr. at 28.) Plaintiff requested Appeals Council review of this decision. (Tr. at 14.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on April 8, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On June 12, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.    Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

**C.     Governing Law**

Disability for purposes of DIB and SSI is defined as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a)(DIB), 416.905(a)(SSI).

Plaintiff's Social Security disability determination is to be made through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his]

past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)(cited with approval in *Cruse,* 502 F.3d 532, 540 (6th Cir. 2007)); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)("[c]laimant bears the burden of proving his entitlement to benefits."). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), (g).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff last met the insured status requirements through December 31, 2014, and had not engaged in substantial gainful activity since September 16, 2010. (Tr. at 21, 210.) At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar and thoracic spine, left kidney cancer status-post partial left nephrectomy and diabetes mellitus were "severe" within the meaning of the second sequential step. (Tr. at 21.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 22.) The ALJ found that the Plaintiff had the residual functional capacity (RFC) to perform light[3] work limited by the need to alternate from sitting and/or standing throughout the

---

3

    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds. Even though the weight lifted may be very little, a job is in the category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine

5

workday, and only occasionally stoop, crouch, and climb ramps or stairs, with no limitation on balancing. Plaintiff should not climb ladders, ropes, scaffolds, or kneel or crawl. Further, Plaintiff should not have concentrated exposure to fumes, odors, dust, gas or areas of poor ventilation; he can frequently push and/or pull with his upper extremities, but should no more than occasionally lift above shoulder level with his right upper extremity; he can frequently grip and/or grasp with both upper extremities. (*Id*.) At step four, the ALJ found that Plaintiff could not perform any of his past relevant work. (Tr. at 26-27.) At step five, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy and therefore he was not suffering from a disability under the Social Security Act. (Tr. at 22-28.)

### E. Administrative Record

Plaintiff was 43 years old when he applied for disability benefits. (Tr. at 93, 101.) Plaintiff has past work as a nurse's aide, home attendant and licensed nurse. (Tr. at 179.) Plaintiff has an LPN in nursing. (Tr. at 179, 198.) At the hearing, Plaintiff testified that he is 6 feet 6 inches tall and weighs 315 pounds. (Tr. at 61.) He weighed 349 pounds when he applied for disability and he testified that he lost the weight due to stress. (*Id*.) Plaintiff lives with his wife and two school-aged children. (Tr. at 48, 186.)

Plaintiff has a history of back pain. An MRI performed on December 28, 2009, prior to alleged onset, revealed bilateral facet arthropathy at L3-L4 and L4-L5 with a left L5-S1 annular tear with a small focal disc protrusion. (Tr. at 232.) In the summer of 2010, Plaintiff aggravated his back while lifting an air conditioner, which resulted in increased lower back pain with radiation

---

that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

down the left leg. (Tr. at 230, 232.) He sought emergency treatment for the back pain on July 9, 2010, and imaging revealed masses on his kidneys, later diagnosed as renal cell carcinoma. (Tr. at 270-78.) He was also diagnosed with an acute exacerbation of chronic low back pain with radiculopathy. (Tr. at 276.) On September 20, 2010, Plaintiff underwent a left kidney partial nephrectomy. (Tr. at 325-27.)

Within weeks of the surgery, Plaintiff sought treatment for pain radiating into his right leg. (Tr. at 278-80.) His diagnoses at that time included "subacute right lower back and flank pain with numbness extending to the right proximal thigh," renal cell carcinoma status-post left partial nephrectomy, chronic low back pain due to degenerative disc disease, hypertension and non-insulin dependent diabetes mellitus. (Tr. at 280, 337.)

On follow-up for the cancer, Plaintiff's surgeon noted that Plaintiff is at "intermediate risk of recurrence." (Tr. 337-38.) Follow-up was planned for six months, and then yearly after that. (Tr. at 337-38.) Plaintiff's right-sided pain was noted to be "likely neuropathic in nature." (Tr. at 337.) In November 2010, Plaintiff complained of pain at the site of his incision and numbness in the lower right extremity that was still present but improving. He continued to report chronic low back pain radiating to the left lower extremity. (Tr. at 381.) Rakesh P. Chokshi, M.D., reported diagnoses of renal cell carcinoma, cholelithiasis, right leg neuropathy and chronic low back pain. (Tr. at 381.) By November 29, 2010, it was reported that Plaintiff's acute hematuria had resolved. (Tr. at 438.)

From November 30, 2010, until December 30, 2010, Plaintiff attended physical therapy to address his low back pain and radiculopathy and reportedly attended 8 of 11 scheduled visits. (Tr. at 417.) After six sessions, the therapist reported that Plaintiff was not experiencing leg pain, Plaintiff reported that his leg pain was infrequent, and that he was able to use stairs with less pain

7

and difficulty, however he continued to have difficulty bending over to tie his shoes and his decreased standing tolerance was impacting his activities of daily living. (Tr. at 428.) Despite the improvement, the physical therapist noted that Plaintiff had self-discharged from therapy. (*Id*.)

December 11, 2010 x-rays of the right shoulder revealed mild degenerative changes in the greater tuberosity and glenoid, with joint space maintained and soft tissue within normal limits. (Tr. at 402.) In March 2011, Plaintiff reported to the emergency room with complaints of lumbar pain and a headache. (Tr. at 420-26.) Final diagnoses were acute exacerbation of chronic lumbar pain, acute abdominal pain, status-post nephrectomy and acute cephalgia. (Tr. at 425.)

Plaintiff reports that due to the cancer surgery, he has pain when bending over and leg problems which make it difficult for him to lift. (Tr. at 186.) He reports that he needs help putting on socks, getting into and out of the tub and uses a toilet extender to reduce the need to bend. (Tr. at 186-87.) He reports that he is able to drive and go out alone. (Tr. at 189.) He reads, watches television and uses the internet. (Tr. at 190.)

Plaintiff testified that he takes medications Lyrica, ibuprofen 800 mg, and Vicodin for pain. (Tr. at 71-73.) He also takes metformin and Glucotrol for diabetes and enalapril and lisinopril for his blood pressure. (Tr. at 214, 447.) Plaintiff testified that he has never had to take insulin by injection or any other means for his diabetes and that he also follows a diabetic diet. (Tr. at 55-56.) Plaintiff has asthma which is fairly well controlled. Plaintiff reported that he has a nebulizer, which he uses less than once per month, and an albuterol inhaler, but that he does not carry an inhaler with him. (Tr. at 60.)

Plaintiff's attorney submitted new medical records to the Appeals Council, shown as Exhibits 8F and 9F in the Transcript. The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial

8

evidence." *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (*citing Richardson*, 402 U.S. at 401).[4] Plaintiff did not request remand for consideration of this new evidence.

The vocational expert ("VE") testified that Plaintiff has past work as a nurse's aide and home attendant, both semi-skilled and classified at the heavy exertional level per the Dictionary of Occupational Titles, and a licensed practical nurse, skilled work classified at the medium exertional level. (Tr. at 87.) At the hearing, the ALJ asked the vocational expert ("VE") to consider an individual of the Plaintiff's age, education and past work experience who is limited to light work:

---

[4]It is worth noting that the court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002). The party seeking remand has the burden of showing that it is warranted. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993) ("Where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where *the party seeking remand* shows that the new evidence is material.")(emphasis added)(citations omitted).

A review of the exhibits for the sole purpose of determining whether they are new and material shows that the evidence is dated prior to the date of the ALJ's decision and thus relates "to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b). The evidence that was submitted to the Appeals Council is not entirely evidence that was before the ALJ. Plaintiff has not requested a remand for consideration of this evidence, and it is unlikely that this evidence would have resulted in a different decision by the ALJ. In fact, records dated December 16, 2011, do not show a worsening of condition and show that Plaintiff continues to have no evidence of recurrence of the cancer. (Tr. at 449.) He is described as continuing to "exercise regularly and lose weight," and "denies any hematuria, flank pain or unintentional weight loss." (*Id.*) April 2011 records were similarly uneventful and unlikely to have resulted in a different decision by the ALJ. (Tr. at 451-52, 458-61.)

> [B]ut that person can do no climbing of ladders, ropes or scaffolds, that person can occasionally stoop, kneel, crouch and crawl and has no limitation on balancing. The person can occasionally climb ramps and stairs, frequently push and pull with the upper extremities. (Tr. at 88.)

The VE testified that such an individual could perform Plaintiff's past work as a home attendant. (*Id.*)

The ALJ then asked the VE to consider the same individual as the prior hypothetical with the additional limitations:

> [T]hat the person requires the option to alternate sitting and standing as needed throughout the work day. That person can have no concentrated exposure to fumes, odors, dust, gases or areas of poor ventilation, that person can do no more than occasional lifting above shoulder level with the right upper extremity. That person can do no climbing of ladders, ropes or scaffolds. That person can do no kneeling or crawling and . . . . no more than frequent gripping or grasping with both upper extremities. (Tr. at 88-80.)

The VE testified that such an individual could not perform any of Plaintiff's past work. (Tr. at 89.) However, such an individual could perform unskilled, entry level jobs in the state of Michigan, for example, 1,800 jobs as a packer and 4,500 jobs as a checker/inspector. (*Id.*) The VE provided an explanation for the basis of his opinion that such jobs would allow a sit/stand option. (Tr. at 89-90.)

Finally, the ALJ asked whether there would be jobs for the individual in the second hypothetical if the person were expected to be off-task for more than ten-percent of the work day due to symptoms from impairments. The VE testified that there would not be jobs for such an individual. (Tr. at 90.)

    **F.**    **Analysis**

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 8.) Plaintiff argues that the ALJ erred by forming a hypothetical question to

the VE that did not accurately portray Plaintiff's impairments and failed to describe the Plaintiff's limitations in full. (Doc. 8.) Plaintiff only generally alleges that the Commissioner failed to "properly evaluate the medical records and opinions of evidence," (Doc. 8 at 8.) As Defendant points out, Plaintiff fails to identify any medical evidence of record or opinion that the ALJ failed to consider. Plaintiff relies solely on his testimony at the administrative hearing as evidence of limitations that were not considered. Plaintiff argues that he testified that he was not able to use his hands "frequently" due to numbness and tingling, he takes pain medication not only for his hands, but for back pain that radiates down his left leg, he is limited in his ability to sit and stand, he cannot sit more than 5 minutes due to pain, he frequently has to change positions, he has trouble sleeping, his sleep is limited to approximately two hours per night, he has tried sleeping on the floor, he has difficulty dressing and bathing due to pain and requires assistance from his spouse for both and that he has fallen due to back pain. (Doc. 8 at 10-11.) Where Plaintiff has failed to identify any medical evidence or opinions of record that contradict the ALJ's findings, and Plaintiff's arguments rest on Plaintiff's testimony and allegations of symptoms and limitations, inherent in Plaintiff's arguments is the allegation that the ALJ failed to properly consider Plaintiff's credibility.

As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports a different conclusion. *McClanahan,* 474 F.3d 830, 833 (6th Cir. 2006); *Mullen,* 800 F.2d at 545. The Court has reviewed the record in full and substantial evidence exists in the record to support the ALJ's conclusion that Plaintiff has the RFC to perform a limited range of light work. The medical evidence as a whole did not provide objective support

11

for Plaintiff's allegations of severe and totally disabling functional limitations stemming from his impairments, including medications or pain.

Contrary to Plaintiff's argument, the ALJ gave very specific reasons for discounting Plaintiff's testimony about the intensity, duration and limiting effects of his symptoms. As required by the Regulations, the ALJ fully explained his credibility determination with respect to Plaintiff's symptoms. 20 C.F.R. §§ 404.1529, 416.929; *see also* SSR 96-4p and 96-7p. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witnesses's demeanor and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence and contain specific reasons for the weight the adjudicator assigned to the individual's statements. *See id.*; SSR 96-7p. To the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). In addition to objective medical evidence, the ALJ must consider all the evidence of record in making his credibility determination. *See* 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (3); *see also Felisky*, 35 F.3d at 1039-41.

The ALJ considered all the evidence of record in determining the credibility of Plaintiff's statements about the limiting effects of his symptoms. In his decision, the ALJ addressed Plaintiff's testimony that he has difficulty sitting longer than five minutes due to pain. (Tr. at 23, 25.) The ALJ discussed the extent of Plaintiff's activities of daily living, pointing out that the

Plaintiff continues to drive and drove himself to the hearing from another city. (Tr. at 25, 58.) Plaintiff continues to attend church for three hours on Sundays, where he is a minister and is able to "get up a lot" during the services, he shops, prepares simple meals and reported that he takes care of his personal needs. (Tr. at 26, 80.) Despite reports of side effects from Lyrica and oxycodone, he is able to lecture at his church and drive. (Tr. at 25, 193.) Following surgery, Plaintiff reported to his doctor that he was able to walk about one and a half miles per day on a treadmill but was having pain. (Tr. at 381.)

The ALJ also considered the medical evidence of record, stating that "no physician, treating or otherwise, has ever indicated that there was a medical reason why the claimant's impairments were as limiting as alleged." (Tr. at 26.) The record bears this out, as does Plaintiff in his brief which fails to cite any specific medical evidence or opinion which supports finding greater limitations than those identified by the ALJ. As the ALJ pointed out, Plaintiff's treatments have been "relatively conservative." (Tr. at 25.) Therapies have been effective in improving symptoms. (Tr. 25, 428.) Findings have been relatively mild, minimal or stable. A CT of the abdomen and pelvis in July 2010 revealed only "mild degenerative changes involving the lumbar spine." (Tr. at 273.) October 2010 images revealed only "minimal degenerative changes in both hip joints." (Tr. at 312.) An October 2010 thoracic MRI revealed only mild degenerative changes and no high-grade spinal canal or neural foraminal stenosis. (Tr. at 319.) An MRI from October 7, 2010 showed that the disk herniation and tear was stable and facet degenerative changes were present at multiple levels in the lumbar spine. The doctor opined that no surgical intervention was warranted. (Tr. at 294, 310.) With respect to Plaintiff's right-sided numbness, on October 13, 2010, Faith Abbott, D.O., noted on examination that the Plaintiff did not have any "testable numbness," although Plaintiff reported that he felt numbness. (Tr. at 295-97.) At a November 8, 2010 follow-

up examination to the nephrectomy, the examining doctor reported that the Plaintiff had 5/5 motor strength in all extremities, a stable gait, and exhibited 90 degree flexion of the lumbosacral spine when retrieving a piece of paper from the floor. (Tr. at 381.)

With respect to Plaintiff's allegations regarding limitations of the upper extremities, including in the hands, the ALJ pointed out relatively normal or mild physical examinations, which are supported by the record. (Tr. at 24, 271, 279-281 "intact motor strength in all 4 extremities".) An August 20, 2010 electromyography revealed only mild axonal sensory neuropathy, likely due to diabetes, and "some decreased recruitment in bilateral L5 myotomes." (Tr. at 351-52.) Iftikhar A. Khan, M.D., noted that "[o]verall, these findings are also subtle and I am not sure about the significance of this minor abnormality and imaging of the spine may be of further help." (Tr. at 352.)

Plaintiff testified that he had torn both of his rotator cuffs in the past. (Tr. 74.) He testified that the left one "is fine," but it was recently discovered that he has arthritis in the right shoulder. (Tr. at 75.) However, when he sought treatment for back and mid left arm pain on December 6, 2008, no history of rotator cuff injury was noted and examination and images revealed only soft tissue swelling. (Tr. at 257.) He was diagnosed with acute left arm strain. (Tr. at 261.) On August 14, 2009 Plaintiff reported to the emergency room with complaints of right forearm pain. Again, there is no notation of a history of rotator cuff injury. (Tr. at 263.) Plaintiff was discharged with a diagnosis of acute lateral epicondylitis of the right arm or "tennis elbow." (Tr. at 264.) No further report of arm pain or medical history related to the same is reported at emergency room visits in 2010. (Tr. at 265.) In March 2011, despite seeking emergency treatment for back pain, Plaintiff's upper and lower extremities were noted to be normal on examination, motor and sensory exams were normal and equal strength was noted in all extremities with sensation intact and no focal

14

deficits. (Tr. at 423.) The ALJ's credibility findings were properly explained and supported by substantial evidence in the record.

It is worth noting that Plaintiff's brief alleges that Plaintiff "continuously needs to rest and avoid use of his left upper extremity." (Doc. 8 at 11.) At the hearing Plaintiff testified that his left shoulder is "fine" now. It is the right shoulder in which he alleges arthritis and had some discomfort in lifting it to shoulder level. (Tr. at 75.) This is consistent with the ALJ's RFC limitations to the right upper extremity and not the left.

The ALJ's references to both the documents of record and the hearing testimony reveal that all of Plaintiff's limitations were considered in formulating the hypothetical to the VE. The ALJ severely limited Plaintiff to performing a range of light work. The classification of "light" work limits Plaintiff to lifting no more than twenty pounds. Plaintiff testified that he lifted a great deal more weight in his prior jobs, prior to the alleged onset date. (Tr. at 50-52.) The ALJ, despite finding that Plaintiff can sit for longer than five minutes, accommodated Plaintiff's back and leg pain and a need to change position by limiting Plaintiff to performing jobs that allow the worker to alternate between sitting and standing. With respect to Plaintiff's upper extremities, the ALJ found that Plaintiff has limited use of the right arm above shoulder level to only occasionally, which is an occurrence ranging from "very little" up to one-third of the time. SSR 83-10. Plaintiff is further limited to jobs which allow less than constant (frequent) pushing and/or pulling with the upper extremities. To accommodate the subtle abnormalities revealed by the electromyography and Plaintiff's complaints of tingling and numbness in his hands, the ALJ also limited Plaintiff to less than constant gripping and grasping with both upper extremities. (Tr. at 22, 352.) Plaintiff testified that his fingers sometimes "lock up" but this was not elsewhere supported in the record evidence. (Tr. at 57.) The ALJ addressed Plaintiff's testimony that he has difficulty with climbing stairs by

15

limiting him to only occasional climbing of stairs, as well as ladders, ropes or scaffolds, kneeling or crawling, further addressing limitations to the upper right extremity, as well. The record does not show that Plaintiff is unable to bend, and the ALJ took into account Plaintiff's testimony that he has some difficulty with it by limiting him to no more than occasional crouching or stooping.

The ALJ's RFC was supported by substantial evidence in the record. The ALJ included those limitations in the hypothetical question to the VE. The ALJ properly relied on the VE's testimony in response to the hypothetical question to find that Plaintiff can perform a significant number of jobs in the economy. The ALJ's finding at step five is supported by substantial evidence in the record.

### G.   Conclusion

The ALJ's decision to deny benefits was within the range of discretion allowed by law, it is supported by substantial evidence and there is simply insufficient evidence to find otherwise. Defendant's Motion for Summary Judgment (doc. 9) should be granted, that of Plaintiff (doc. 8) denied and the decision of the Commissioner affirmed.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837 (*citing Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d

1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. E.D. Mich. LR 72.1(d)(3). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ Charles E Binder
CHARLES E. BINDER
United States Magistrate Judge

Dated: May 22, 2014

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

s/ *Kristen R. Krawczyk*
Kristen R. Krawczyk
Case Manager Specialist

Dated: May 22, 2014